JONES, Justice.
This appeal is from a decree of the trial court granting Appellee’s motion to dismiss Appellant’s election contest on the grounds of Appellant’s noncompliance with Code 1975, § 17 — 15-21, requiring election contestants to give to adverse parties notice of the nature of the evidence contestant expects to show at the trial of the case.
Though somewhat complex, the factual background of this case, when reduced to its simplest form, may be stated as follows:
Dan Wiley, Democratic candidate for Mobile County Commissioner in District Two, defeated Republican candidate James A. Carter by a margin of eight votes in the November 4, 1980, general election. Carter’s motions for a writ of prohibition to stay the certification of the election results and for a writ of mandamus to compel a recanvassing of the ballots were denied and Wiley was certified as the winner of the election. Carter then filed a statement of election contest pursuant to the provisions of Code 1975, § 17-15-1, et seq., stating as the basis for his contest three grounds:
“(a) Malconduct, fraud or corruption on the part of [election officials] which mal-conduct, fraud or corruption if corrected would show that ‘Contestant’ received a majority of the legal votes cast in said election for said office.
“(b) ... if the illegal votes counted for ‘Contestee’ were deducted from the total votes received by said ‘Contestee’ that ‘Contestant’ would have a majority of the legal votes cast in said election for said office and should be declared the winner of said office.
“(c) ... if the rejected legal votes had been counted, ‘Contestant’ would have had a majority of the legal votes cast in said election for said office and should be declared the winner of said office.”
Carter’s complaint specified the various offenses which he contends support his stated grounds:
“Contestant avers that the malconduct, fraud or corruption hereinabove charged in grounds (a) of Part Four of this election contest consisted of the following *342 wrongful and unlawful acts by election officials:
“(a) Said election officials committed the following wrongful and unlawful acts in connection with the absentee voting and the counting of absentee ballots, which wrongful and unlawful acts changed the result of the election:
“(1) The election officials in charge of the absentee voting rejected certain legal ballots which were cast by members of the armed forces for James A. Carter because they were not notarized, when in fact they were sworn to in front of a proper military officer and should have been allowed; . . .
“(2) That in preparing the envelopes for absentee voting as set forth in the Code of Alabama 1975, Sections 17-10-1 through 17-10-20 but more particularly as set out in Sections 17-10-6 through 17-10-9 . . . the election officials furnished the affidavit required by Section 17-10-8 in primary elections, which affidavit is inapplicable to the general election and said election officials disallowed or rejected absentee votes because the voter had not marked which party he was a member of, which was an improper rejection of a legal ballot; .. .
“(3) Said election officials in charge of counting the absentee ballots committed errors in tabulating the ballots cast and gave to Dan Wiley phantom ballots which were not based on legal votes or any votes at all, but which were counted and added into Dan Wiley’s total votes as if he had received legal votes in place of the non-existent or phantom votes; . . .
“(4) Said election officials in charge of counting the absentee ballots committed errors in tabulating the ballots cast in that they did not give to James A. Carter the proper total of legal votes cast for him, and in fact, gave some of the total legal votes cast for Carter to Wiley, and in addition miscounted the total number of legal votes cast for Carter as to make Carter’s total vote as arrived at by the said election officials innaccurate and below the actual legal vote received by Carter; . . .
“(5) That the election officials who tabulated the absentee ballots when a discrepancy arose in the tally sheets which were tabulated by more than one person [instead] of rechecking to determine the correct tally the election officials merely divided the difference in half and Petitioner avers that this method also caused Candidate Wiley to receive more legal votes than he actually received and caused Candidate Carter to receive less legal votes than he actually received;

“(6) Said election officials rejected legal absentee ballots cast for Candidate Carter received by such officials after the election; . . .
“(b) Said election officials committed the following wrongful and unlawful acts in regard to tabulating the results from the voting machines and in tabulating challenged ballots, which wrongful and unlawful acts changed the result of the election.
“(1) The election officials in reading the computer print-outs misread the numbers contained thereon by reading numbers that actually were sevens (7’s) as if said numbers were ones (l’s) which caused ‘Contestant’ to receive six (6) less legal votes than he was entitled to in each instance when a seven (7) appeared and there was more than one such instance where a seven (7) in the count for ‘Contestant’ was misread, and said election officials misread the digit eight (8) as if it were a six (6), which caused ‘Contestant’ to receive two (2) less legal votes than he was entitled to, and this happened on more than one instance; and said election officials misread the digit nine (9) as if it were a four (4), which caused ‘Contestant’ to receive five (5) less votes than he was entitled to, and this also happened on more than one instance;

“(2) The election officials failed to properly count the challenged ballots in that in tabulating the challenged ballots cast they gave to Dan Wiley phantom ballots which were not based on legal *343 votes or any votes at all, ... and said officials committed errors in tabulating the challenged ballots cast in that they did not give to James A. Carter the proper total of legal challenged ballots cast for him, and in fact gave some of the total legal votes cast for Carter to Wiley, and in addition miscounted the total number of legal votes cast for Carter so as to make Carter’s total vote as arrived at by the said election officials inaccurate and below the actual vote received by Carter;

“(3) Said election officials .counted into Dan Wiley’s total votes certain challenged ballots which had not been ruled as legal or illegal votes, and which were in fact illegal votes. . . . ”
Carter concludes, as to each of. the alleged instances of malconduct, that, except for such acts of malconduct, he would have been declared the winner in the election.
Before Contestee Dan Wiley filed an answer to Contestant Carter’s complaint, Carter noticed the taking of the depositions of seven non-party election officials, served a subpoena duces tecum with each notice and filed a motion to inspect all election records and documents. With his answer, Wiley filed a motion to dismiss the contest. The motion to inspect and the motion to dismiss were denied, the election officials were granted protective orders, and, upon Wiley’s motion, Carter was ordered to comply with the notice requirement of § 17-15-21, which states:
No testimony must be received of any illegal votes or of the rejection of any legal votes in any contested election commenced under the provisions of this article unless the party complaining thereof has given to the adverse party notice in writing of the number of illegal votes and by whom given and for whom given, and at what precinct or voting place cast, or the number of legal votes rejected, and by whom offered, and at what precinct or voting place cast, which he expects to prove on the trial. Such notice must be served personally or left at the residence or usual place of business of the adverse party at least 10 days before the taking of testimony in reference to such votes..
Carter filed a pleading styled “Notice of Nature of the Evidence” (and a later supplement thereto), which purported to comply with the terms of § 17-15-21, stating in pertinent part:
Contestant states that there is hereto attached and marked Exhibit “A”, . .., the list of legal votes cast in the County Commission District Two General Election of Tuesday, November 4, 1980, which were rejected, which said list gives the name of the person voting whose legal vote was rejected .... Contestant avers that all of said votes on said list were cast for Contestant James A. Carter, and all of which legal votes were rejected, and all of which votes were cast by Absentee Ballots delivered to the Courthouse . . ., that said list gives the precinct and voting place wherein each voter would have voted had he or she not voted by Absentee Ballot. If these legal votes rejected are included in the total vote received by Contestant, then Contestant will have received the highest number of legal votes cast in said election.
“The total number of said legal votes is 1,522.
“Applications have heretofore been made to the Honorable John L. Moore, Judge of Probate of Mobile County, Alabama, pursuant to Section 17-15 — 4 of the 1975 Code of Alabama, to deliver to the Contestant or his attorney a certified copy of the poll lists of challenged ballots cast in said election . . ., and upon said Judge of Probate’s complying with said provision of Alabama law, Contestant will furnish to the Contestee the names, voting districts, and number of votes thereof which will be offered as proof on the trial of said cause as having been illegally cast for Contestee Wiley... . ”
Carter also re-noticed the taking of the depositions of the election officials. Wiley moved for an order striking Carter’s pleading on the grounds of noncompliance with the mandates of § 17-15-21. At a January 16, 1981, hearing on this and two other *344 pending motions, the trial court issued an order affirming the earlier protective orders, granting Carter’s motion for a continuance and granting Wiley’s motion to strike, a portion of which order states:
“1. The Court finds that the pleading styled ‘Notice of the Nature of Evidence’ and the supplement are not in compliance with Section 17 — 15—21 and are due to be striken. The Court has concluded that the 1,531 names listed by the Contestant were virtually all the persons who requested absentee ballots (as admitted by both parties). As made clear by the official canvass, at least 478 persons voted for Contestee, Dan Wiley, and could not have voted for the Contestant, James Carter, as asserted in his pleadings. Additionally, 583 absentee ballots were cast for the Contestant, James Carter, and counted. This, also, is contrary to the pleading of the Contestant. No evidence was offered as to whether or not the remaining ballots were ever returned. The Court further finds that the Contestant’s pleading, if not in bad faith, is a shotgun attempt to subvert the particularized notice required by Section 17-15-21.
“2. With reference to that portion of the pleading which makes reference to the applications heretofore made to the Judge of Probate of Mobile County, Alabama, the Court finds that the said pleading does not meet the requirements of Section 17-15-21, 1975 Code of Alabama, in that it does not give any numbers of illegal votes cast or by whom given or for whom [given], at which precinct or voting place cast, or the number of legal votes rejected, and by whom offered, and at what precinct or voting place cast. It is, at best, merely speculative.”
Wiley again moved to dismiss the contest and filed motions in opposition to the continuance and for a rehearing on the granting of the continuance, citing as his grounds a portion of § 17-15-29, which states:
“The Contest is triable by the Court without the intervention of a jury and must be heard and tried in precedence to all other cases, civil or criminal, standing for trial in the court.”
At the January 21, 1981, hearing on all pending motions, the trial court offered Carter a continuance so that he might comply with § 17-15-21 as previously ordered. When Carter declined, the trial court entered its final order, the concluding paragraphs of which state:
“13. The Court further finds that the Contestant, despite several postponements has failed and/or refused to comply with an order of this Court to supply the Contestee with the notice of the nature of the evidence as required by § 17-15-21. Contestant, on December 31, 1980, and in supplement on January 5, 1981, did file a pleading styled Notice of Nature of Evidence [but this Court] found the pleading spurious and in specific violation of both the letter and spirit of the notice required by § 17-15-21, Code of Alabama, 1975.
“14. Upon consideration of the Contestant’s motion for a continuance the Court assumed that the pleading was to gain time within which to supply the Court with further evidence of the alleged wrongdoing of the Contestee. Upon a careful reading of the motion and consideration that seven days have passed the Contestant has further failed to supply evidence as required by the Court’s order of December 11, 1980, the Court is of the opinion that continuance of this matter would be in vain. The Court sees no reason to delay matters further and does now consider the motion of the Contestee to dismiss.
“15. This Court, guided by the decision of the Alabama Supreme Court in Turner v. Cooper, 347 So.2d 1339, finds that Contestant has failed and/or refused to comply with an order of this Court and that such failure, under Rule 41(b) Alabama Rules of Civil Procedure, is sufficient cause to dismiss. Going further it appears that some fifty five (55) days having passed since the filing of this suit, Contestant is unable and will be unable to supply the Contestee with the nature of his evidence as required by § 17-15-21.
*345 “16. Having granted the Contestant several postponements and a general continuance, it appears that further delay and interlocutory appeal of the matter would not be in the interests of judicial economy nor would it best serve the interest of the voters of Mobile County who are entitled to a speedy solution of contested elections. Contestant admits this conclusion in his motion for a continuance where he asks for additional time solely for the purpose of intermediate review. “17. This Court, further guided by the decision of Turner v. Cooper need not await a certain trial date when that result is obvious in view of the Contestant’s failure to comply with the ten day requirement of § 17-15-21, Code of Alabama, 1975.”
Contestant, in oral argument before this Court, concedes his noncompliance with the notice requirements of § 17-15-21 with respect to the various allegations of challenged, illegally received or rejected, and phantom ballots in his statement of election contest. As to his charges of incorrect totals resulting from the malconduct, fraud or corruption of the election officials, however, Contestant maintains that literal compliance with the statutory requisites was impossible because specific votes (or voters), as to their legality vel non, were not the bases of those particular allegations.
This Court agrees with Contestant that the evidence contemplated by the literal terms of § 17-15-21 can not be reconciled with the particular grounds of § 17-15-1(1). Although § 17-15-1(1) expressly provides for contests on the grounds of “malconduct, fraud or corruption on the part of any inspector, clerk, marker, returning officer, board of supervisors or other person,” once contest is filed stating malconduct as its grounds, the contestant is then apparently prevented from proceeding with his case because his inability to comply with the demands of § 17-15-21 prohibits his taking of testimony necessary to prove his claims.
While the language of § 17-15-21 does not explicitly mandate a method by which notice of the nature of the evidence a contest based on malconduct of the election officials must be given to the con-testee, the statute implicitly contemplates that notice of a sort applicable to the grounds asserted be required. If this were not true, a statute permitting malconduct as a grounds for a contest would be useless absent a means to proceed under the notice requirements of § 17-15-21. Moreover, the lack of a remedy to enforce the statutory right of contest would be an obvious violation of a contestant’s due process rights. in
As stated above, the provisions of § 17-15-21, requiring a contestant to supply the contestee with the number of legal votes rejected or illegal votes counted which contestant expects to prove on the trial, can not be read so literally as to exclude the right of a contestant to charge and prove fraud on the part of election officials. In establishing that proof, however, a contestant, via his notice of the nature of evidence, must reconcile his allegations of malconduct with his notice pleading (as required by § 17-15-21) in such a manner that the contestee is put on notice that those allegations of malconduct are matters which contestant seeks to prove. For aught that appears in his notice of the nature of evidence, Contestant Carter had abandoned his allegations of malconduct. In that notice pleading, Contestant pursues only those allegations of his complaint with respect to the issues of rejection of legal, and acceptance of illegal, votes. His notice does not, however, comport with the contention upon which he now proceeds: the alleged malcon-duct of the election officials in tabulating the votes and in tampering with the posted totals.
Although we agree with Contestant that the broad scope of § 17-15-1 permits a challenge of fraud in the tabulation of the vote totals, as well as other instances of official malconduct, his attempt to follow the statutory mandates of § 17-15-21 put him at variance with his allegations of fraud on the part of those officials. Where, as here, a contestant draws his fraud allegations as charging a particular species of fraud and contends that such allegations *346 are authorized under the statute, he is left with no choice but to conform his formal notice of the nature of evidence to his charging averments or suffer defeat in his effort to discover evidentiary support for such allegations.
We hold that the trial court did not err in finding that Contestant “failed and/or refused to comply with an order [of the trial court] to supply the Contestee with notice of the nature of the evidence as required by § 17-15-21.”
AFFIRMED.
FAULKNER, ALMON, SHORES, EM-BRY, BEATTY and ADAMS, JJ., concur.
TORBERT, C. J., and MADDOX, J., concur specially.