On Application for Rehearing

BRYAN, Judge.
The opinion of February 5, 2010, is withdrawn, and the following is substituted therefor.
Robert R. Bowers, the defendant below, appeals from a judgment in favor of Keith Bell, the plaintiff below.[1] We affirm.
On January 16, 2008, Bell sued Bowers, stating a claim of ejectment. As the factual basis of his claim, Bell alleged that he owned a parcel of land located on Tom Cat Road in Piedmont (“the land”); that Bowers, Bell’s first cousin, was in possession of the land; and that Bowers had refused to surrender possession of the land to Bell. As relief, Bell sought a judgment ejecting Bowers from the land.
Answering, Bowers denied the material allegations of Bell’s complaint and averred that he and Bell had entered into an oral contract, that the oral contract had vested him with an equitable interest in the land, and that he was entitled to possession of the land by virtue of that equitable interest. Specifically, he averred that Bell had orally agreed, to allow Bowers, to operate his junkyard and used-automobile-parts business on the land and to devise the land to Bowers at Bell’s death in exchange for Bowers’s agreeing to keep Bell’s automo *132 biles running for the rest of Bell’s life and to bequeath Bowers’s business and equipment located on the land to Bell and certain other individuals specified by Bell if Bowers predeceased Bell. Bowers further averred that Bell had subsequently placed him in possession of the land, that Bowers had operated his business on the land, that Bell had executed a will devising the land to Bowers at Bell’s death, that Bowers had executed a will bequeathing his business and equipment to Bell and the other persons specified by Bell if Bowers predeceased' Bell, and that Bowers had kept Bell’s automobiles running from the date of the oral agreement until Bell stopped bringing his automobiles to Bowers for repair in 2006.
Thereafter, the trial court held a bench trial at which it received evidence ore ten-us. At trial, Bell asserted that he owned the land by virtue of his mother’s conveying it to him in a deed dated December 4", 1995, and that the Statute of Frauds barred Bowers from establishing that he owned an interest in the land by virtue of the oral contract. Bowers, on the other hand, asserted that the Statute of Frauds did not bar him from establishing that he owned an interest in the land by virtue of the oral contract because, he said, Bell had placed him in possession of the land and Bowers had performed his obligations under the oral contract by repairing Bell’s cars whenever they needed it from the date of the oral contract until Bell stopped bringing his cars to Bowers for repair in 2006.
Bell introduced into evidence a deed executed by his mother on December 4,1995, in which she had conveyed title to the land to Bell. Bell testified as follows. In approximately 1999, he and Bowers had entered into an oral contract in which Bell promised to allow Bowers to operate his junkyard and used-automobile-parts business* on the land without paying rent and to devise the land to Bowers at Bell’s death and Bowers had promised to keep Bell’s automobiles running for the rest of Bell’s life and to bequeath Bowers’s business and equipment to Bell and certain other individuals specified by Bell if Bowers predeceased Bell. Bowers later wrote two wills, one for Bell to sign and the other for Bowers to sign. The will that Bowers had prepared for Bell devised the land to Bowers while the will that Bowers had prepared for himself bequeathed his business and equipment to Bell and the other persons Bell had specified if Bowers predeceased Bell. Bell and Bowers signed the wills that Bowers had prepared, but they did not sign them in the presence of witnesses or a notary public. In 2006, Bowers sold some dirt he had taken from the land without Bell’s permission, and Bell sent Bowers two written notices to vacate the land; however, Bowers did not vacate the land. Bell then executed a new will devising the land to someone other than Bowers. Bell took his cars to Bowers when they needed repairs from the date Bell and Bowers entered into the oral contract until Bell learned in 2006 that Bowers had sold dirt he had taken from the land without Bell’s permission. Bowers repaired Bell’s automobiles when Bell brought them to him.
Bowers’s testimony coincided with Bell’s except that he testified that he and Bell had signed their wills in the presence of two witnesses who subscribed their names to the wills as witnesses and that he, Bell, and the witnesses had signed their names in the presence of a notary public who acknowledged their signatures. However, Bowers did not introduce executed wills into evidence. Instead, explaining that he could not find the executed wills or copies of the executed wills, he introduced unsigned copies of the wills.
*133 In pertinent part, the unsigned copy of Bell’s will stated:
“I, KEITH WAYNE BELL, HEREBY GIVE, DEVISE AND BEQUEATH UNTO ROBERT ROMELL BOWERS ALL MY PROPERTIES, BOTH REAL, PERSONAL AND MIXED, TANGIBLE AND INTANGIBLE, OF WHATSOEVER NATURE AND WHERESOEVER SITUATED, TO BE MY PROPERTY, ABSOLUTELY AND UNCONDITIONALLY,
“a) PROPERTIES LOCATED [on] TOMCAT ROAD [in] PIEDMONT.... “b) PROPERTY CAN NOT BE SOLD NOR MORTGAGED NOR MONEY BORROWED FOR THREE (3) GENERATIONS, AT THIS TIME IT CAN ONLY BE SOLD TO HIS CHILDREN, THEIR CHILDREN OR THEIR CHILDREN.
“c) ONE LOT LOCATED ON GAN-NON ROAD [in] PIEDMONT, ALABAMA — OUTSIDE OF FENCE OF PROPERTY LOCATED [on] TOMCAT ROAD [in] PIEDMONT ... WILL GO TO MY SON BRAIN [sic] KEITH BELL. THIS PROERTY [sic] MUST NOT BE SOLD [to] ANYONE OTHER THAN THE SAID ROBERT ROMELL BOWERS OWNER OF PROPERTY LOCATED [on] TOMCAT ROAD [in] PIEDMONT....”
(Capitalization in original.)
In pertinent part, the unsigned copy of Bowers’s will stated:
“I, ROBERT ROMELL BOWERS, HEREBY GIVE, DEVISE AND BEQUEATH ALL MY PROPERTIES, BOTH REAL, PERSONAL AND MIXED, TANGIBLE AND INTANGIBLE, OF WHATSOEVER NATURE AND WHERESOEVER SITUATED, TO BE MY PROPERTIES, ABSOLUTELY AND UNCONDITIONALLY.
“a) ALL MY PROPERTIES LOCATED [on] TOMCAT ROAD [in] PIEDMONT ... TO BE DIVIDED EVENLY WITH BRAIN [sic] KEITH BELL, DANA BOWERS MOORE, CHARLES BOWERS, ROBERT E. BOWERS AND WILLIAM J. BOWERS.
[[Image here]]
“Q ALL OTHER MONIES ARE TO BE DIVIDED EQUALLY BETWEEN: “1) BRAIN [sic] KEITH BELL, DANA BOWERS MOORE, CHARLES BOWERS, ROBERT E. BOWERS AND WILLIAM J. BOWERS.
“d) NO LAND CAN BE SOLD BUT TO EACH BLOOD BROTHER OR SISTER FOR THREE (3) GENERATIONS. NO MONIES CAN BE BORROWED NOR CAN LAND BE PUT UP FOR BOND UNDER NO CIRCUMSTANCE.” [2]
(Capitalization in original.)
Neither will referred to the existence of the oral contract obligating Bell and Bowers to make the wills or recited the terms of that oral contract.
Jean Eubanks, a friend of Bowers’s who performed some of his bookkeeping work, corroborated Bowers’s testimony that the parties had signed the wills in the presence of two witnesses who subscribed their names to the wills as witnesses and that the parties and the witnesses had signed their names in the presence of a notary public who acknowledged their signatures.
After the trial, the parties submitted briefs. Thereafter, the trial court entered a judgment in favor of Bell. In pertinent part, the judgment stated:
*134 “1. The Court finds in favor of the Plaintiff, Keith Bell and against Defendant, Robert R. Bowers.
“2. Defendant, Robert R. Bowers failed to show ... to the Court that he is entitled to receive the property located [on] Tom Cat Road [in] Piedmont.... “3. Plaintiff, Keith Bell is hereby awarded his property located [on] Tom Cat Road [in] Piedmont....
“4. Defendant, Robert R. Bowers is to immediately vacate the premises without in any way damaging or destroying any buildings or other tangible or intangible objects located thereon belonging to the Plaintiff.”
Bowers subsequently filed a post-judgment motion, which the trial court denied. Bowers then timely appealed to the supreme court, which transferred the appeal to this court pursuant to § 12-2-7(6), Ala.Code 1975.
Because the trial court received evidence ore tenus, our review is governed by the following principles:
“ ‘ “ ‘[W]hen a trial court hears ore tenus testimony, its findings on disputed facts are presumed correct and its judgment based on those findings will not be reversed unless the judgment is palpably erroneous or manifestly unjust.’ ” ’ Water Works & Sanitary Sewer Bd. v. Parks, 977 So.2d 440, 443 (Ala.2007) (quoting Fadalla v. Fadalla, 929 So.2d 429, 433 (Ala.2005), quoting in turn Philpot v. State, 843 So.2d 122, 125 (Ala.2002)). ‘ “The presumption of correctness, however, is rebuttable and may be overcome where there is insufficient evidence presented to the trial court to sustain its judgment.” ’ Wattman v. Rowell, 913 So.2d 1083, 1086 (Ala.2005) (quoting Dennis v. Dobbs, 474 So.2d 77, 79 (Ala.1985)). ‘Additionally, the ore tenus rule does not extend to cloak with a presumption of correctness a trial judge’s conclusions of law or the incorrect application of law to the facts.’ Wattman v. Rowell, 913 So.2d at 1086.”
Retail Developers of Alabama, LLC v. East Gadsden Golf Club, Inc., 985 So.2d 924, 929 (Ala.2007).
On appeal, Bowers reiterates the arguments he made in the trial court, i.e., that the oral contract vested in him an equitable interest in the land entitling him to possess it and that the Statute of Frauds did not bar him from establishing his equitable interest in the land by virtue of the oral contract because Bell had placed him in possession of the land and he had partially performed the oral contract by repairing Bell’s cars from the date of the oral contract until Bell stopped bringing his cars to Bowers for repair in 2006.
However, we do not reach those arguments because the trial court’s judgment is due to be affirmed on the ground that Bowers failed to satisfy the requirements of § 43-8-250, Ala.Code 1975. Section 43-8-250 provides:
“A contract to make a will or devise, or not to revoke a will or devise, or to die intestate, if executed after January 1,1983, can be established only by:
“(1) Provisions of a will stating material provisions of the contract;
“(2) An express reference in a will to a contract and extrinsic evidence proving the terms of the contract; or “(3) A writing signed by the decedent evidencing the contract.
“The execution of a joint will or mutual wills does not create a presumption of a contract not to revoke the will or wills.”
(Emphasis added.)
In his testimony, Bell admitted that he had entered into an oral contract to devise the land to Bowers and he confirmed the terms of that contract. Howev *135 er, the plain language of § 43-8-250 states that a contract to make a will can only be established by proof satisfying subpara-graphs (1), (2), or (3) of that statute. When plain language is used in a statute, a court is bound to interpret that language to mean exactly what it says. See IMED Corp. v. Systems Eng’g Assocs. Corp., 602 So.2d 344, 346 (Ala.1992). Consequently, in the case now before us, although the factual existence of the oral contract obligating Bell to devise the land to Bowers was established by undisputed extrinsic evidence, the plain language of § 43-8-250 indicates that a court can give legal effect to that contract only if the proof of its existence satisfied subparagraphs (1), (2), or (3) of that statute.
Subparagraph (1) of § 43-8-250 requires that there be a will “stating material provisions of the contract.” In the case now before us, the material provisions of the oral contract entered into between the parties consist of the parties’ mutual promises. Bell promised to allow Bowers to operate his junkyard and used-automobile-parts business on the land without paying rent and to devise the land to Bowers at Bell’s death, and Bowers promised to keep Bell’s automobiles running for the rest of Bell’s life and to bequeath Bowers’s business and equipment to Bell’s son and certain other individuals specified by Bell. The will that Bowers prepared for Bell devised the land to Bowers, but it did not indicate that Bell had entered into a contract obligating him to make that devise or recite the mutual promises that had formed the contract. Likewise, the will Bowers prepared for himself bequeathed his business and equipment to the persons Bell had specified with the exception of Bell himself,[3] but it did not indicate that Bowers had entered into a contract obligating him to make that bequest or recite the mutual promises that had formed the contract. Accordingly, we conclude that the proof of the oral contract obligating Bell to devise the land to Bowers did not satisfy subparagraph (1) of § 43-8-250.[4]
Subparagraph (2) of § 43-8-250 requires that there be “[a]n express reference in a will to a contract and extrinsic evidence proving the terms of the contract.” In the case now before us, undisputed extrinsic evidence proved the factual existence of the contract and its terms, but neither the will Bowers prepared for Bell nor the will Bowers prepared for himself contained an express reference to their oral contract. Therefore, we conclude that *136 the proof of the contract did not satisfy subparagraph (2) of § 43-8-250.[5]
Subparagraph (3) of § 43-8-250 requires that there be “[a] writing signed by the decedent evidencing the contract.” In the case now before us, the only writing signed by Bell was the will prepared for him by Bowers. That will does not evidence the contract because it neither indicated that Bell had entered into a contract obligating him to devise the land to Bowers nor recites the mutual promises that formed the contract. Consequently, we conclude that the proof of the contract did not satisfy § 43-8-250(3).
Neither party raised the issue whether the proof of the oral contract obligating Bell to devise the land to Bowers satisfied § 43-8-250 in the trial court, and neither party has raised that issue on appeal. Nonetheless, this court
“can affirm a judgment on a basis not asserted in the trial court. Cain v. Howorth, 877 So.2d 566, 584 (Ala.2003); Smith v. Equifax Servs., Inc., 537 So.2d 463, 465 (Ala.1988). This Court cannot avoid its obligation to affirm the trial court’s judgment if that court has reached the correct result, because a litigant has miscalculated the applicability of the appropriate rule of law. See Williams-Guice v. Board of Educ. of Chicago, 45 F.3d 161, 164 (7th Cir.1995) (‘Still, litigants’ failure to address the legal question from the right perspective does not render us powerless to work the problem out properly. A court of appeals may and often should do so unbidden rather than apply an incorrect rule of law to the parties’ circumstances.’) (citing United States Nat’l Bank of Oregon v. Independent Ins. Agents of America, Inc., 508 U.S. 439, 113 S.Ct. 2173, 124 L.Ed.2d 402 (1993); Kamen v. Kemper Fin. Servs., Inc., 500 U.S. 90, 111 S.Ct. 1711, 114 L.Ed.2d 152 (1991)). See also Forshey v. Principi, 284 F.3d 1335, 1357 n. 20 (Fed.Cir.), cert. denied, 537 U.S. 823, 123 S.Ct. 110, 154 L.Ed.2d 33 (2002), superseded by statute on other grounds as stated in Morgan v. Principi, 327 F.3d 1357, 1358-59 (Fed.Cir.2003) (‘ “Appellate review does not consist of supine submission to erroneous legal concepts even though none of the parties declaimed the applicable law below. Our duty is to enunciate the law on the record facts. Neither the parties nor the trial judge, by agreement or passivity, can force us to abdicate our appellate responsibility.” ’) (quoting Empire Life Ins. Co. of America v. Valdak Corp., 468 F.2d 330, 334 (5th Cir.1972)). The Supreme Court of Wisconsin stated the principle quite succinctly in Laffey v. City of Milwaukee, 4 Wis.2d 111, 115, 89 N.W.2d 801, 803 (1958), when it held, ‘Where we find an order to be correct, we may affirm it notwithstanding that counsel supported it on an erroneous theory, or even disclaimed the view of the law which we hold to be right.’ ”
Blue Cross & Blue Shield of Alabama v. Hodurski, 899 So.2d 949, 960 (Ala.2004). Moreover, although the judgment of the trial court does not indicate whether the trial court considered the issue whether the proof of the oral contract obligating Bell to devise the land to Bowers satisfied § 43-8-250, we can affirm a judgment of the trial court on any valid legal ground regardless of whether it was considered by the trial court. Ex parte Ryals, 773 So.2d 1011, 1013 (Ala.2000). Indeed, we can even affirm a judgment of the trial court on a valid legal ground that was rejected by the trial court. Id. Accordingly, we affirm the judgment of the trial court be *137 cause the proof of the oral contract obligating Bell to devise the land to Bowers failed to satisfy the requirements of § 43-8-250, and, therefore, Bowers failed to establish that he was vested with an equitable interest in the land that entitled him to possession of the land.
APPLICATION OVERRULED; OPINION OF FEBRUARY 5, 2010, WITHDRAWN; OPINION SUBSTITUTED; AFFIRMED.
THOMPSON, P.J., and PITTMAN, THOMAS, and MOORE, JJ., concur.

. Following the entry of the judgment in favor of Keith Bell, he died and the personal representative of his estate, Brian Keith Bell, was substituted as the plaintiff/appellee in this action.

. We note that, although the unsigned copy of the will Bowers prepared for himself names Bell’s son, Brian Keith Bell, as a legatee, it does not name Bell as a legatee.

. See supra note 2.

. We note that Bell testified that the wills prepared by Bowers were not signed in the presence of two witnesses, which raises the issue whether the wills were validly executed pursuant to § 43-8-131, Ala.Code 1975, which provides that, "[ejxcept as provided within Section 43-8-135, every will shall be in writing signed by the testator or in the testator’s name by some other person in the testator’s presence and by his direction, and shall he signed by at least two persons each of whom witnessed either the signing or the testator's acknowledgment of the signature of the will." (Emphasis added.) Although Bowers and Jean Eubanks testified that the wills prepared by Bowers were signed in the presence of two witnesses, the trial court, as the sole judge of the credibility of the witnesses, see Woods v. Woods, 653 So.2d 312, 314 (Ala.Civ.App.1994) ("In ore tenus proceedings, the trial court is the sole judge of the facts and of the credibility of witnesses, and the trial court should accept only that testimony it considers to be worthy of belief.”), could have accepted Bell’s testimony that the wills prepared by Bowers were not signed in the presence of two witnesses and rejected the conflicting testimony of Bowers and Eubanks. However, because the trial court did not make any express findings of fact with regard to that issue, we have, for purposes of this opinion, assumed without deciding that the wills prepared by Bowers were validly executed.

. See supra note 3.